**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

ZHEN GUANG LIU, individually and on
behalf of all other employees similarly
situated,

      Plaintiff,

  -against-

DA DI CHINESE FOOD, INC., SIU YING
CHEN, JOHN LI, PUN CHAN, YAN LI,
JOHN AND JANE DOES 1-10,

      Defendants.

-------------------------------------------------------X

            **REPORT AND RECOMMENDATION**

            **16-CV-937 (MKB) (ST)**

**TISCIONE, United States Magistrate Judge:**

   Plaintiff Zhen Guang Liu ("Plaintiff" or "Liu") initiated this action against defendants Da

Di Chinese Food, Inc. ("Da Di"), Yan Li ("Li"), Siu Ying Chen, John Li, Pun Chan, and John and

Jane Does 1-10 on February 24, 2016. Dkt. No. 1. In the complaint, Liu asserted claims arising

under the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), and New

York General Business Law § 349. *Id.* On January 13, 2017, Plaintiff filed an amended complaint,

in which he asserted the same causes of action, but dropped Siu Ying Chen, John Li, Pun Chan,

and John and Jane Does 1-10 from the case. *See* Dkt. No. 28 ("Am. Compl." or the "Amended

Complaint").[1] On August 11, 2017, Da Di and Li (together, "Defendants") filed a fully briefed

motion for summary judgment. *See* Dkt. Nos. 43-52. On October 5, 2017, the Honorable Margo

K. Brodie referred the motion to me for report and recommendation. Minute Entry 10/05/2017.

---

[1] Plaintiff also named Kim Fai Chinese Food in the Amended Complaint as another corporate name by
which Da Di operates. For clarity, the Defendant corporation is referred to herein as "Da Di,"
regardless of how it is referenced in the memoranda and exhibits.

For the reasons described below, I respectfully recommend that Defendants' motion for summary

judgment be granted.

## I.   BACKGROUND

According to the Amended Complaint, Plaintiff asserts the following.[2] Between June 30,

2015 and December 16, 2015, Plaintiff, a resident of Brooklyn, was employed as a delivery worker

by Da Di, which is located at 1628 Utica Avenue in Brooklyn, New York. Am. Compl. ¶ 7.

Defendant Li is the "owner, officer, director, and/or managing agent of Da Di[,] . . . participated

in the day-to-day operations[,] . . . and is an employer pursuant to the FLSA." *Id*. ¶ 12. Li "manages

and makes all business decisions [at Da Di,] including but not limited to the amount in salary the

employee will receive and the number of hours employees will work." *Id*. ¶ 13.

Plaintiff states that he worked six days per week, as follows: on Tuesdays, Wednesdays,

and Thursdays, he worked for twelve hours without a break; on Fridays and Saturdays, he worked

for thirteen hours without a break; and on Sundays, he worked for eleven hours without a break.

*Id*. ¶ 21. Consequently, Plaintiff alleges that he worked about seventy-three hours per week. *Id*.

For this work, Plaintiff asserts that he received a fixed monthly salary of $1,600. *Id*. ¶ 22. He states

that he was never required to use any method of recording or verifying his hours. *Id*. ¶ 23.[3]

At his deposition, Plaintiff stated that he did not handle receipts for meals that were

consumed inside or picked up at the restaurant, *see* Dkt. No. 47-6 ("Liu Dep.") at 53, he did not

work at the restaurant's cash register, *see id*., and he spent approximately two-thirds of every day

outside the restaurant making deliveries. *See id*. at 35, 53. Nonetheless, Plaintiff also stated that he

---

[2]   The Court notes that Defendants deny almost all of the allegations in the Amended Complaint. *See* Dkt. No. 29.

[3]   Plaintiff also provides this information in his sworn declaration, adding that he received cash tips on delivery orders. *See* Dkt. No. 49-1 ("Liu Decl.").

believed Da Di earned approximately "one-thousand something [dollars] per day," and that he believed the restaurant earned between $40,000 and $50,000 per month. *See id.* at 51-53.[4]

Based on his allegations, Plaintiff asserts that Defendants violated numerous provisions of the FLSA and the NYLL, including those that mandate overtime pay, reimbursements for tools of the trade, spread-of-hours pay, record-keeping, and wage notices. *See* Am. Compl. ¶¶ 24-37. Defendants dispute whether Da Di is subject to the FLSA based on its annual income, which they assert is less than $500,000 per year. *See* Dkt. No. 44 ("Defs. Br.") at 7-8. In support of their argument, Defendants submit the restaurant's tax returns from 2014 and 2015, *see* Dkt. Nos. 47-1 ("2014 Return") and 47-2 ("2015 Return"), bank records from the restaurant's business checking account, *see* Dkt. No. 47-5 ("Bank Rec."), handwritten time records of Liu's hours, salary, and tips, *see* Dkt. No. 47-3, and handwritten records purporting to list orders the restaurant received. *See* Dkt. No. 47-4 ("Sales Rec.").[5] According to the tax returns, Da Di earned $139,924 in gross sales in 2014, *see* 2014 Return, and $152,817 in gross sales in 2015. *See* 2015 Return. Da Di earned this revenue exclusively through cash transactions, according to Li's testimony at her deposition, because the restaurant does not accept credit cards. *See* Dkt. No. 49-2 ("Li Dep.") at 62, 100-01. The tax returns were not signed by Li, *see* 2014 Return; 2015 Return,[6] but in her sworn declaration,

---

[4] Although Liu's deposition testimony is somewhat confusing in that it is not obvious whether his sales estimates are for delivery only or for all orders received at Da Di, in his sworn declaration, Liu provides more specific estimates. *See* Liu Decl. ¶¶ 11-13. In his declaration, he estimates that the restaurant earned between $600 and $800 on delivery orders on Sundays, Tuesdays, Wednesdays, and Thursdays, and between $900 and $1,080 on delivery orders on Fridays and Saturdays. *Id.*

[5] The Court notes that aside from the dates, it is unclear from the face of the records what the numbers listed are meant to represent. *See generally* Bank Rec. In the memorandum in support of their motion, Defendants assert that the records list the "gross sales made each day at the store for all of 2015." Defs. Br. at 8. However, it is unclear to the Court whether the numbers represent cash earned or orders taken per day.

[6] Da Di used an accounting firm to complete and submit tax forms on its behalf. *See* 2014 Return at 7; 2015 Return at 7; Li Dep. at 79-81, 110.

Li states that the tax returns are "true copies" of the restaurant's tax records. *See* Dkt. No. 46 ("Li Decl.") ¶¶ 5, 6. Additionally, during her deposition, Li explained what records she provided to Da Di's accountant in order to file the tax returns. *See* Li Dep. at 113-15.

Thus, the question before this Court is whether or not a genuine issue of fact exists as to Da Di's gross annual sales income. *See generally* Def. Br. at 7 ("Plaintiff[ ] [has] failed to make a sufficient showing [of] essential elements of enterprise coverage . . . , i.e. the financial threshold."); Dkt. No. 48 ("Pl. Br.") at 6 ("The question is whether Defendants have 'annual gross volume of sales made or business done' of at least $500,000.") (quoting 29 U.S.C. § 203).

## II.  ANALYSIS

### A.  Summary Judgment

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When determining whether a genuine issue of fact exists on summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010) ("In reviewing a motion for summary judgment, we construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor."); *Chillemi v. Town of Southampton*, 2017 U.S. Dist. LEXIS 209338, at *22 (E.D.N.Y. Dec. 20, 2017) ("The court is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to

eschew credibility assessments.") (internal quotation marks and citations omitted).

"[T]he moving party bears the initial burden of establishing that there are no genuine issues of material fact[;] once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986)). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," because "mere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted) (alteration in original). Moreover, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient" to defeat summary judgment. *Anderson*, 477 U.S. at 252. Consequently, it is insufficient for the party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then the Court must enter summary judgment. *Celotex*, 477 U.S. at 322.

## B. The FLSA

Under the FLSA, employers must pay covered employees overtime wages for time worked in excess of forty hours per week. *See* 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.110(a). Likewise, "[a]n employer violates the FLSA if it requires an employee to purchase 'tools of the trade which will be used in or are specifically required for the performance of the employer's particular work' and 'the cost of such tools . . . cuts into the minimum or overtime wages required to be paid to [the employee]." *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 476 (S.D.N.Y. 2015) (quoting

29 C.F.R. § 531.35). Covered employees are those employees who were: "(1) personally engaged in interstate commerce or in the production of goods for interstate commerce ('individual coverage'), or (2) [were] employed in an enterprise engaged in interstate commerce or in the production of goods for interstate commerce ('enterprise coverage')." *Yupa v. Country Stone & Fence Corp.*, 2017 U.S. Dist. LEXIS 361, at *6-7 (E.D.N.Y. Jan. 3, 2017) (internal quotation marks and citations omitted); *see also Jiaren Wei v. Lingtou Zhengs Corp.*, 2014 U.S. Dist. LEXIS 182325, at *9 (E.D.N.Y. Dec. 3, 2014), *adopted by*, 2015 U.S. Dist. LEXIS 20622 (E.D.N.Y. Feb. 20, 2015) ("To establish a claim under the FLSA, [a] plaintiff must prove the following: (1) the defendant is an enterprise participating in commerce or the production of goods for the purpose of commerce; (2) the plaintiff is an 'employee' within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA."). Thus, in this case, the dispute between the parties centers on whether Da Di constitutes an "enterprise" under the statute. *See* Defs. Br. at 7-9; Pl. Br. at 5-8.[7]

"Enterprise coverage under the FLSA requires that the employee demonstrate that the employing entity 'has employees engaged in commerce or in the production of goods for commerce, or has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person' *and* 'is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).'" *Yupa*, 2017 U.S. Dist. LEXIS 361, at *9 (quoting 29 U.S.C. § 203(s)(1)) (emphasis in original). Whether an employer meets these criteria is determined on an annual basis. *See* 29 C.F.R. § 779.238.

---

[7]   Plaintiff does not assert that he qualifies for individual coverage under the FLSA. *See generally* Pl. Br. at 5-8.

The parties do not appear to dispute whether Da Di's employees handled goods or materials that have been moved in interstate commerce. *See* Defs. Br. at 7-9; Pl. Br. at 6. Instead, they dispute whether the restaurant's annual gross volume of sales was more than $500,000 for the period at issue. *See* Defs. Br. at 7-9; Pl. Br. at 6-8. As explained above, Defendants have provided tax returns, sales records, bank statements, and testimony in support of their argument that Da Di's gross annual income in 2014 and 2015 was well below the $500,000 required to meet the enterprise threshold. *See* 2014 Return, 2015 Return, Sales Rec., Bank Rec., Li Dep. They assert that the totality of these records demonstrate that Da Di's gross sales did not exceed the $500,000 required under the FLSA, and thus, summary judgment should be granted in their favor. *See* Defs. Br. at 8.

In response, Plaintiff makes the following arguments. Regarding the tax returns, Plaintiff argues that: (1) "tax returns for small businesses such as Da Di are notoriously unreliable[;]" (2) the fact that the returns were "not signed, nor accompanied by a statement or affidavit of the tax preparer" suggests that they are inaccurate; (3) "the tax returns are clearly contradicted by evidence and the Plaintiff's affidavits[;]" and (4) "all of the sales at Da Di [r]estaurant were conducted in cash, therefore, it is highly unlikely that the gross revenue listed on the restaurant's tax returns reflected the actual income of the restaurant." Pl. Br. at 7. Regarding the sales records, Plaintiff argues that "the authenticity and contemporaneousness of the logs are questionable." *Id*. at 8.[8] Regarding the bank records, Plaintiff argues that the records "tell us absolutely nothing about Defendants' gross revenues[,]" and the records "in no way coincide with Defendants' daily sales logs." *Id*. Thus, Plaintiff concludes, Defendants' evidence is "highly unreliable," which creates a

---

[8]   Plaintiff further argues, "[t]hese records are so basic that they cannot be used as a basis to determine a lack of disputed material fact. For instance, the records do not indicate the number of orders that were made each day, the value of each order, whether the order was for takeout or delivery, or whether the order was made by credit card or cash." *Id*. at 8.

"question of credibility" as to whether Da Di met the $500,000 gross sales threshold, and therefore, summary judgment would be inappropriate.

While this Court agrees with Plaintiff on certain issues, the Court nonetheless respectfully recommends that summary judgment be granted in favor of the Defendants for the reasons outlined below.

The bank records submitted by Defendants are difficult to interpret and, based on Li's deposition, not particularly instructive on the question of Da Di's gross sales. *See* Bank Rec. At her deposition, Li stated that not all cash income from the business was deposited into the corporate bank account, and at least some vendor payments were made in cash rather than with disbursements from the corporate account. *See* Li Dep. at 117-19. As such, it is reasonable to conclude that the bank records do not reflect the full amount of income earned and expenses paid out by Da Di during the period at issue. Furthermore, this Court agrees with Plaintiff that the bank records do not appear to correspond with the restaurant's sales records in any comprehensible way, such that the bank records do not offer much insight into the restaurant's total income from sales. *Compare* Sales Rec. *with* Bank Rec.

Furthermore, as Plaintiff suggests, Defendants' sales records are not particularly helpful or dispositive on the question of whether the restaurant earned more than $500,000 in gross sales annually.[9] As explained above, it is unclear whether the records show the number of sales made or the dollar income earned per day, and Li's Declaration does not clarify the issue. *See* Li Decl. ¶¶ 6-9 ("The sales records . . . were created by me, each day, by totaling all the sales made at the end

---

[9]    Nonetheless, the Court notes that Plaintiff's arguments about cash versus credit card and take-out versus eat in order is beside the point. Li stated in her deposition that the restaurant does not accept credit cards, *see* Li Dep. at 62, 100-01, and Plaintiff offers no explanation as to why it would be relevant to the gross sales inquiry whether the sales were made as eat in or take-out orders.

of each day and recording it in this notebook at the end of that day.").

However, notwithstanding these deficiencies in the evidence, the Court nonetheless recommends summary judgment because Da Di's tax returns clearly show that the restaurant earned less than $500,000 per year for the relevant time period. Regulations promulgated by the Labor Department permit the use of tax records to compute the annual gross sales of a business. *See* 29 C.F.R. 779.266; *see also Grant v. All Star Baby Safety, Inc.*, 2016 U.S. Dist. LEXIS 88851, at *4 (E.D.N.Y. July 8, 2016) (noting that courts may review tax returns when considering this issue in the context of a motion for summary judgment). And despite Plaintiff's assertion that "evidence" exists to contradict the accuracy of the tax returns, in support of his argument, he points only to his own statements that the records are not credible, and seemingly, to the fact that Li did not sign the tax returns herself. *See generally* Pl. Br. at 7-8.

However, it is not sufficient for Plaintiff to argue that the tax returns did not credibly report the gross sales simply because "tax returns for small businesses such as Da Di are notoriously unreliable." *See* Pl. Br. at 7; *Li v. Zhao*, 35 F. Supp. 3d 300, 306 (E.D.N.Y. 2014). To avoid summary judgment, Plaintiff must point to "concrete" and "affirmative" evidence to support the conclusion that the restaurant earned more than $500,000 in sales annually. *See Li v. Zhao*, 35 F. Supp. 3d at 306 (citing *Anderson*, 477 U.S. at 256). Courts in this District have held as much on multiple occasions. *See id.* (granting summary judgment where a plaintiff's only evidence that defendants had met the requisite $500,000 threshold under the FLSA was the plaintiff's own statements attacking the credibility of the returns); *see also Yupa*, 2017 U.S. Dist. LEXIS 361, at *9 (holding that tax returns sufficiently established that a defendant did not meet the $500,000 threshold under the FLSA where no evidence was presented to rebut the returns); *Li v. Cheng*, 2012 U.S. Dist. LEXIS 40151, at *15 (E.D.N.Y. Mar. 21, 2012) (finding, in the context of an

enterprise analysis, that "conclusory testimony and conclusory statements" by the plaintiff attacking the accuracy of defendants' tax returns was insufficient to create an issue of material fact).

Furthermore, although Plaintiff cites *Rocha v. Bakhter Afghan Halal Kababs, Inc.*, 44 F. Supp. 3d 337 (E.D.N.Y. 2014), in support of his position, *see* Pl. Br. at 7, that case is distinguishable from the case at bar. In *Rocha*, the court held that "[t]he absence of a signature on the tax returns, combined with the absence of an affidavit from the tax preparer or from the owner of the business verifying the authenticity of the returns caution against presuming their authenticity." *See Rocha*, 44 F. Supp. 3d at 348. The court then went on to evaluate evidence that contradicted the contents of the tax returns before the court, which included a significant discrepancy between the business's lease and its reported rent payments, disputes over total salaries and wages paid to twelve employees, and sworn testimony from three employees who worked in the restaurant's kitchen about the approximate total sales per day. *See id*. at 348-49. The *Rocha* court ultimately found that based on these contradictions, a genuine issue of material fact existed as to whether the defendant in the case met the $500,000 sales threshold under the FLSA. *Id*. at 350.

Although this case bears some resemblance to *Rocha*, it is nevertheless distinguishable. First, unlike the defendant in *Rocha*, Li has submitted a declaration swearing to the authenticity of the tax returns. *See* Li Decl. ¶¶ 5, 6. Second, in the instant case, the only evidence Plaintiff points to that directly contradicts the information in the tax returns is his own testimony about how much money he believes the restaurant earned. *See* Pl. Br. at 7-8. While the Court agrees with Plaintiff that the sales records and bank records submitted by Defendants are not dispositive proof that Da Di's gross sales were *less than* $500,000 annually, nothing in the records suggests that Da Di

10

actually earned *more than* $500,000. Nor is there any evidence before the Court suggesting that Da Di's expenses were inconsistent with its reported income. Stated differently, Plaintiff has failed to point to any true contradiction between Da Di's records and the tax returns, whereas the plaintiffs in *Rocha* noted a discrepancy of more than $50,000 between the rent the defendant was required to pay under its lease and the rent payments it reported on its tax returns. *See Rocha*, 44 F. Supp. 3d at 348.

Additionally, *Rocha* is distinguishable from the instant case based on the jobs performed by the *Rocha* employees. Unlike the Plaintiff in this case, the three plaintiffs in *Rocha* all worked inside the premises of the restaurant that employed them. *See Rocha*, 44 F. Supp. 3d at 340. One worked at the grill and plated foods, another was a helper in the kitchen, and the third was a dishwasher. *Id.* Like Plaintiff, they submitted sworn testimony about the number of orders placed and the approximate income earned by their employer each day. *Id.* at 348-49. However, their estimations were based on time spent inside the restaurant preparing food and cleaning dishes, *see id.*, which is inherently different than the experience of an individual who makes off-site deliveries for a restaurant. To be clear, this Court is not suggesting that a delivery person is unable make an accurate assessment of their employer's daily or monthly sales revenue. Nor is it assessing Plaintiff's credibility. However, it bears noting that testimony from Liu, who admits that he spent approximately two-thirds of every day outside the restaurant and never worked at the cash register or handled eat in receipts at Da Di, *see* Liu Dep. at 52-54, is simply not *identical* to testimony from three employees who worked inside the premises of a restaurant preparing food and cleaning dishes. This fact is merely another indicator that the *Rocha* holding is distinguishable from the case at bar.

In light of these distinctions, this Court concludes that the *Rocha* holding does not

necessitate a finding that a genuine issue of material fact exists as to whether Da Di earned more than $500,000 in gross sales annually. Instead, the Court finds the opposite; due to a dearth of evidence contradicting the accuracy and authenticity of the tax returns submitted by Defendants, and the pattern of precedent in this District finding that conclusory attacks on the credibility of tax returns is insufficient to create a genuine issue of fact, the Court finds that there is no genuine issue of material fact on the question of whether Da Di meets the threshold to be considered an "enterprise" under the FLSA. *See generally Yupa*, 2017 U.S. Dist. LEXIS 361, at *9; *Li v. Zhao*, 35 F. Supp. 3d 300, 306; *Li v. Cheng*, 2012 U.S. Dist. LEXIS 40151, at *15. Accordingly, Court respectfully recommends that Defendants' motion for summary judgment on the FLSA claims be granted.

### C.  Remaining State Law Claims

This Court further respectfully recommends that Plaintiff's state law claims be dismissed without prejudice. Should the District Court find that Plaintiff's FLSA claims fail, an independent basis for federal jurisdiction over this matter will no longer exist. *See generally Yupa*, 2017 U.S. Dist. LEXIS 361, at *13. Though the Court may opt to exercise supplemental jurisdiction at its discretion, *see* 28 U.S.C. § 1367, resolution of the state claims in this matter would require determination of additional factual and legal matters, such that dismissal of those claims is most appropriate. *See N.Y. Mercantile Exch., Inc. v. IntercontinentalExchange, Inc.*, 497 F.3d 109, 119 (2d Cir. 2007) (holding that "in general, where the federal claims are dismissed before trial, the state claims should be dismissed as well[,] . . . [especially where] resolving the state law claim would entail resolving additional issues of fact") (internal quotation marks and citation omitted). Although Plaintiff argues that this Court should choose to exercise supplemental jurisdiction over the state law claims in this case because he would otherwise be "severely prejudiced" and perhaps

have to engage in "duplicative discovery," the Court disagrees. *See* Pl. Br. at 9-10. "While discovery has been completed and the instant case proceeded to the summary judgment stage, it does not appear that any discovery would need to be repeated if [Plaintiff's] pendent claim [] [was] brought in state court." *Yupa*, 2017 U.S. Dist. LEXIS 361, at *13 (quoting *Tishman v. The Associated Press*, 2007 U.S. Dist. LEXIS 85588, at *28-29 (S.D.N.Y. Nov. 19, 2007)) (internal quotation marks omitted). Plaintiff essentially concedes as much by arguing that "Plaintiff's FLSA claim[s] and NYLL [claims] are nearly identical." Pl. Br. at 10. Moreover, the CPLR permits plaintiffs to recommence a dismissed suit within six months without regard to the statute of limitations, *see Tishman*, 2007 U.S. Dist. LEXIS 85588, at *29; CPLR § 205, such that Plaintiff will not suffer prejudice under the statute of limitations if the state law claims are dismissed by this Court. Consequently, this Court respectfully recommends that Plaintiff's claims under the NYLL and New York General Business Law § 349 be dismissed without prejudice.

## III.     CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court issue an order granting Defendants' motion for summary judgment on the FLSA claims, and dismissing the remaining state law claims without prejudice.

## IV.     OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Marcella v. Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d Cir. 2002); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989); *see also Thomas*

*v. Arn*, 474 U.S. 140 (1985). Responses to any objections shall be due fourteen (14) days from service of the objection. *See* Fed. R. Civ. P. 72(b)(2).

**SO ORDERED.**

_____/s/_____
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York


Dated:  Brooklyn, New York

February 6, 2018